UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TAYLOR P. JOSKI,

                Plaintiff,

v.                                  Case No. 17-cv-1074-pp

BROWN COUNTY JAIL, MARK ZERATSKY,
CORPORAL R. LEYENDECKER, LT. RHODE,
and KYLE HERWALD,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE MOTIONS TO APPOINT COUNSEL (DKT. NOS. 9, 12, 19), DENYING MOTION TO GRANT THE AMENDED COMPLAINT (DKT. NO. 16), DENYING MOTION TO AMEND THE COMPLAINT (DKT. NO. 21) AND SCREENING THE AMENDED COMPLAINT (DKT. NO. 15)**

---

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights while he was incarcerated at the Brown County Jail. Dkt. No. 1. The plaintiff filed an amended complaint on April 2, 2018.[1] Dkt. No. 15.

This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, motion to grant the amended complaint, dkt. no. 16, motions to appoint counsel, dkt. nos. 9, 12, 19, and motion to amend the complaint, dkt. no. 21. The court also will screen the plaintiff's amended complaint, dkt. no. 15.

---

[1] The law allows a plaintiff to amend his complaint once without permission from the court, if he does so before the defendants have responded. Fed. R. Civ. P. 15(a)(1). The court will order the clerk's office to docket the amended complaint as the operative complaint.

## I. Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On August 3, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $56.99. Dkt. No. 6. The court received that fee on August 8, 2017. The court will grant the plaintiff's motion to proceed without prepayment of the filing fee, and will order the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this decision.

## II. Screening the Plaintiff's Amended Complaint (Dkt. No. 15)

### A. Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprive him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   The Plaintiff's Allegations

The plaintiff alleges that around 8:00 a.m. on March 9, 2017, he was at Brown County Jail ahead of an 11:30 a.m. court hearing. Dkt. No. 15 at 3. He says that defendant Officer Mark Zeratsky checked him into the jail, told him that he was assigned to Cell Block A and instructed him to go there. Id. The plaintiff explains that as he headed to Cell Block A, he had to pass by Cell Block B. Id. He heard an unknown person say, "There's that bitch ass motherfucker." Id.

The plaintiff asserts that he thought the remark came from Cell Block B, and he noticed that the door to that block was unlocked and moving. Id. The plaintiff slowed and stopped, sensing that something wasn't right. Id. The

3

plaintiff states says before he could react or alert anyone, the door flew open and someone rushed at him and started punching him. Id. This caused him to fall violently against the wall, and knocked him "semi-unconscious." Id. The plaintiff says he doesn't know how many times he was hit; he just balled up until help arrived, and Zeratsky eventually "broke it up." Id.

The plaintiff eventually learned that the man who attacked him was inmate Kyle Herwald. Id. at 5. The plaintiff says that he and Herwald "have court issues pending;" he says that he had no-contact and keep-separate orders for Herwald, because Herwald allegedly robbed the plaintiff and previously beat him up. Id. The plaintiff asserts that Zeratsky and other jail staff have admitted that they were aware of these orders. Id.

The plaintiff alleges that he suffered extensive and significant injuries, including knots on his head, contusions on his face, a knocked-out tooth, a split lower lip, dizzy spells and vomiting. Id. at 3-4. The plaintiff learned that he has a deviated septum. Id. at 4. He states that he cannot breathe very well anymore, and that his nose always hurts. Id. He explains that he is scheduled for surgery. Id. The plaintiff reports that he also had pain in his jaw, which kept him from eating and required that he drink out of a straw for more than a week and be on a soft food diet for a month. Id. The plaintiff says that he had numerous stitches placed in his lower lip, and a dentist had to wire his teeth so his gums and bone could harden around them. Id. The plaintiff also explains that he no longer feels safe and believes people are out to get him, particularly those in authority and everyone in Brown County. Id.

The plaintiff states that jail staff took him to the hospital, where he received treatment for his split lip, contusions and abrasions, but jail staff waited thirty hours before taking him to a dentist to have his tooth and jaw injuries treated. Id. at 5. The plaintiff asserts that, during that time, he was in a lot of pain, and could not sleep, eat or close his mouth. Id.

The plaintiff asserts that he filed an inmate complaint about the incident. Id. at 6. He alleges that Zeratsky lied in his report and stated that the altercation was the plaintiff's fault because he opened the door to Cell Block B. Id. The plaintiff denies that he opened the door. Id. The plaintiff asserts that Zeratsky later contradicted his statement and told "another side of the story" to Deputy District Attorney Dana J. Johnson. Id.

The plaintiff alleges that defendant Corporal R. Leyendecker also lied when he denied the plaintiff's grievance and blamed the plaintiff for the incident by finding that the plaintiff had stopped and opened the door to see who made the comment. Id. at 6-7. The plaintiff denies that he opened the door; he states that he had no choice but to walk by the door to get to his assigned cell block. Id. at 6.

The plaintiff appealed Leyendecker's dismissal. Id. Defendant Lt. Rhode allegedly viewed the video footage and observed that the plaintiff had not opened the door as Zeratsky represented; nevertheless, he affirmed the dismissal, stating that the plaintiff should not have stopped in front of the door but should have kept walking to Cell Block A as instructed. Id. Rhode allegedly

admitted that the door was unlocked, but he found that this was unintentional. Id. at 8.

The plaintiff argues that none of this would have happened if Zeratsky had locked the cell block doors and/or escorted the plaintiff to Cell Block A rather than letting him and other inmates "run[] around doing as they please." Id. at 7, 8.

The plaintiff lists the Brown County Jail, Zeratsky, Leyendecker, Rhode and Herwald as defendants. Id. at 1.

C. The Court's Analysis

To state a failure to protect claim, a plaintiff must allege that "(1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant-officials acted with deliberate indifference to that risk." Brown v. Budz, 398 F.3d 904, 909 (7th Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). At the time of the incident, the plaintiff was a convicted state prisoner at the Brown County Jail to attend a court hearing. This means that the Eighth Amendment protects him from conditions of confinement that amount to cruel and unusual punishment. Id. at 910.

The court will allow the plaintiff to proceed on a failure-to-protect claim against Zeratsky. The plaintiff alleges that Zeratsky knew that there were no-contact and keep-separate orders for the plaintiff and Herwald, yet he ordered the plaintiff to proceed without escort past a cell block door Zeratsky knew was

6

unlocked, which gave Herwald both opportunity and access to attack the plaintiff.

The court will not allow the plaintiff to proceed against the Brown County Jail. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Brown County Jail is not a person, or a legal entity—it is an organization, not an individual subject to suit under §1983. Johnson v. Racine Cty. Jail, No. 15-CV-1291-PP, 2016 WL 482031, at *3 (E.D. Wis. Feb. 5, 2016); see also Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993).

The court also will dismiss Herwald. Under §1983, a plaintiff can sue only "state actors," which is another way of saying that state law must have given the person legal authority over the plaintiff. See West v. Atkins, 487 U.S. 42, 49 (1988); Patel v. Heidelberger, 6 Fed.Appx. 436, 437 (7th Cir. 2001) (holding that a plaintiff "may not bring a § 1983 claim against a private citizen who is not acting under the color of state law"). As a fellow inmate, Herwald had no legal authority over the plaintiff, so he was not a "state actor" and the could not be held liable under §1983.

Finally, the court will dismiss Leyendecker and Rhode. Leyendecker denied the plaintiff's inmate complaint, and Rhode affirmed the denial. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir.

1994)). Under §1983, a plaintiff cannot sue someone under the theory of vicarious liability (meaning, a person will not be liable for another person's misconduct) or under the theory of supervisory liability (meaning, a supervisor will not be liable for the misconduct of his or her employees or subordinates). Because "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation," the plaintiff has not stated a claim against these defendants. George v. Smith, 507 F.3d 605, 609 (7th Cir.2007).

### III. Motions to Appoint Counsel (Dkt. Nos. 9, 12, 19)

The plaintiff filed three motions asking the court to recruit a lawyer to represent him on a volunteer basis. Dkt. Nos. 9, 12, 19. The plaintiff explains that the issues in this case are complex, that he has limited access to the law library and limited knowledge of the law, and that he is not able to read or write very well. Id. The plaintiff also explains that his mother has contacted more than ten lawyers on his behalf, trying find an attorney to represent him. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make a reasonable effort to hire a lawyer on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable effort to hire a lawyer, the court then decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently

present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The court is satisfied that the plaintiff has made a reasonable effort to hire counsel on his own; however, the court will not recruit a lawyer to represent him, because the court believes he is capable of representing himself at this stage. Although the plaintiff says that he can't read or write very well, the court has found his writing to be straightforward, organized and easy to understand. His allegations show that he is able to read and understand incident reports and grievance decisions. The issue the plaintiff has alleged is not particularly complex—he says that Zertatsky knew about the no-contact and keep separate orders, but let him walk past Herwald's cell unprotected.

The court understands that the plaintiff would benefit from having a lawyer. This is true for almost every incarcerated plaintiff. Most of them ask the court to appoint them lawyers. The court does not have money to pay lawyers to represent plaintiffs, however, and there are not enough volunteer lawyers to represent every plaintiff who asks. If circumstances change or if the plaintiff encounters obstacles that he believes he is unable to handle on his own, he may renew his motion and the court will consider it again.

### IV. Motion to Grant the Amended Complaint (Dkt. No. 16)

The plaintiff filed a motion asking the court to grant his amended complaint, and to allow him to change the amount of damages he requested in

9

his amended complaint. Dkt. No. 16. The court is not sure what the plaintiff means when he asks the court to "grant" his amended complaint. It is too soon for the court to decide whether the plaintiff should win this lawsuit. First, it must provide defendant Zeratsky with the complaint. Then the parties will exchange information about the case, and will have an opportunity to file motions. If, after the court decides the motions, there are factual disputes that need to be decided, the court will schedule a trial.

The court suspects that the plaintiff meant to ask for permission to file an amended complaint, to increase the amount of damages he seeks from $900,000 to $2,500,000, the plaintiff does not need to amend his complaint just to change the amount of damages he seeks. The court will deny the motion.

## V. Motion to Grant Second Amended Complaint (Dkt. No. 21)

The plaintiff filed another motion to amend the complaint about three weeks after he filed the first one. Dkt. No. 21. In this motion, he explains that he doesn't know Leyendecker and Rhode's first names. He also explains that, while he said in his amended complaint that he had a deviated septum, he isn't sure that that is true, and he won't know for sure until he goes in for surgery. Id.

Again, there is no need for the plaintiff to amend his complaint for these reasons. The court has dismissed Leyendecker and Rhode because the plaintiff has not stated claims against them for which the court can grant relief, so he does not need to add their first names. And he does not need to wait until he is

100% sure that he has a deviated septum; it is enough for now that he has alleged that he was very severely injured as a result of Zaretsky's actions. The court will deny this second motion to amend the complaint.

**VI. Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES** without prejudice the plaintiff's motions for counsel. Dkt. Nos. 9, 12, 19.

The court **ORDERS** that the clerk's office shall docket the amended complaint (dkt. no. 15) as the operative complaint.

The court **DENIES** the plaintiff's motion to grant the amended complaint. Dkt. No. 16.

The court **DENIES** the plaintiff's motion to amend the complaint. Dkt. No. 21.

The court **DISMISSES** defendants Brown County Jail, Corporal R. Leyendecker, Lt. Rhode and Kyle Herwald.

The court **ORDERS** the United States Marshal to serve a copy of the amended complaint and this order on defendant Mark Zeratsky under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per

item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Zeratsky to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff (Waupun Correctional Institution) shall collect from his institution trust account the $293.01 balance of the filing fee by collecting monthly payments from the trust account in an amount equal to 20% of the preceding month's income credited to that account, and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of Waupun Correctional Institution.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the court.[2] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he shall submit all correspondence and legal material to:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 27th day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.