UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TAYLOR P. JOSKI,

        Plaintiff,

  v.

MARK ZERATSKY,

        Defendant.

Case No. 17-cv-1074-pp

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 52) AND DISMISSING CASE**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983. On August 27, 2018, the court allowed the plaintiff to proceed on a claim against defendant Mark Zeratsky based on the plaintiff's allegations that the defendant failed to protect him from another inmate's attack. Dkt. No. 23. On June 17, 2019, the defendant moved for summary judgment. Dkt. No. 52. The court will grant the defendant's motion and dismiss the case.

**I. RELEVANT FACTS**

A private company called Lock and Load provides inmate transportation services for Brown County. Dkt. No. 54 at ¶¶3-4.

On March 8, 2017, the plaintiff was transferred from Waupun Correctional Institution to the Brown County Jail. Wisconsin Department of Corrections inmate locator, available at https://appsdoc.wi.gov/lop/home.do.

The plaintiff was scheduled to appear the following day at a status conference in his criminal case. Dkt. No. 68 at ¶1.

On the morning of March 9, a Lock and Load employee escorted the plaintiff and several other inmates from the main jail to the circuit court holding area. Dkt. No. 54 at ¶3. According to the defendant, inmates who are taken into this holding area "are restrained and are monitored by at least one [jail] employee at all times." Id. at ¶9. As the inmates are escorted in, the Lock and Load employee removes each inmate's ankle shackles one at a time; each inmate then moves to the front of the room to wait for his waist restraints to be removed. Id. at ¶5. After an inmate's restraints are removed, the assigned jail officer instructs that inmate to go to his assigned holding block to wait for his hearing. Id. at ¶¶6, 10.

There are two holding blocks: A and B. Id. at ¶7. The doors are adjacent to one another and, according to the defendant, are normally kept closed and locked. Id. at ¶¶7-8. The defendant asserts that once an inmate is in an assigned holding block, the inmate cannot re-enter the holding area or enter the other holding block. Id. at ¶11.

On the morning of the 9th, the defendant was assigned to the court holding area. Id. at ¶13. The plaintiff was the last in a line of several inmates to enter the court holding area. Id. at ¶14. The defendant started to help the Lock and Load employee remove the inmates' waist restraints. Id. at ¶15. The defendant removed the plaintiff's restraints and ordered him to go to Holding

Block A. Id. at ¶17. The defendant then moved on to remove another inmate's restraints as the plaintiff walked toward the holding blocks. Id. at ¶18.

As the plaintiff walked to Holding Block A, he had to pass by the Holding Block B door. Dkt. No. 59, Ex. H (available only in the court file). Another inmate was yelling at the plaintiff through the Holding Block B door.[1] Dkt. No. 54 at ¶19. The plaintiff asserts that as he passed the door, he noticed it was unlocked and moving, so he "slowed up and stopped in nearing the door, as something did not look or feel right." Dkt. No. 24 at 3.[2] The defendant asserts that the surveillance video shows the plaintiff opening the Holding Block B door; the plaintiff denies that he opened the door. Dkt. No. 54 at ¶20. The court reviewed the video and cannot tell if the plaintiff opened the door or if he merely paused by the door. Regardless, the parties agree that the door was unlocked. Dkt. No. 68 at ¶30.

As the Holding Block B door opened, inmate Kyle Herwald "rushed [the plaintiff] and started punching [him]." Dkt. No. 24 at 3. See also, Dkt. No. 54 at ¶21. The plaintiff asserts that he does not know how many times he was hit, but as a result of the assault, he suffered a few knots on his head and contusions on his face, his left tooth was knocked loose and facing backwards

---

[1] The defendant says that the inmate who was yelling at the plaintiff was Kyle Herwald. Dkt. No. 54 at ¶19. The plaintiff says that at the time he didn't know it was Kyle Herwald, and didn't know that he was the one being yelled at. Dkt. No. 68 at ¶19.

[2] The court considers the allegations in the plaintiff's sworn amended complaint because the Seventh Circuit has instructed courts to consider it as an affidavit in support of a *pro se* plaintiff's opposition to summary judgment. Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996).

in his mouth, and his lower lip was split wide open. Dkt. No. 24 at 3-4. The defendant intervened to stop Herwald's assault on the plaintiff. Id. at 3.

Unidentified jail officials had entered a keep-separate order for the plaintiff and Herwald when the plaintiff was booked into the jail. Dkt. No. 68 at ¶22. Although the defendant knew about the keep-separate order because of a handwritten note on the morning transport list, he asserts that the note didn't give a reason for the keep-separate order. Dkt. No. 54 at ¶23. The defendant explains that, consistent with the keep-separate order, the plaintiff and Herwald were not in the holding area together, and Herwald was assigned to Holding Block B that morning. Id. at ¶¶26-27. (The defendant says that he didn't play a role in block assignments or issuing keep-separate orders. Id. at ¶36.) The defendant also asserts that the plaintiff did not have to use the door or hallway to Holding Block B (where Herwald was assigned) to get to Holding Block A (where the plaintiff was assigned). Id. at ¶29. The plaintiff disagrees, asserting that he "had to walk past door B to get to door A." Dkt. No. 68 at ¶29.

According to the defendant, he did not know the Holding Block B door was unlocked nor did he purposely leave it unlocked; he says he would have locked it if he'd realized that it was unlocked. Id. at ¶¶31, 33. Nor does the defendant know why the Holding Block B door was unlocked on that day. Id. at ¶32. The plaintiff asserts that not only was the Holding Block B door unlocked, it was propped open. Dkt. No. 68 at ¶34. The defendant asserts that he did not see the door propped open on March 9. Dkt. No. 54 at ¶35.

4

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. The Court's Analysis

Under the Eighth Amendment, prison officials must "protect prisoners from violence at the hands of other prisoners." Cobian v. McLaughlin, 717 F. App'x 605, 610 (7th Cir. 2017) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). "Yet, a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate. Prisons, after all, are dangerous places often full of people who have demonstrated aggression." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008). To prevail on a failure-to-protect claim, a prisoner must show that an official knew of and disregarded an excessive risk to the inmate's health or safety. Id. (citing Farmer, 511 U.S. at 837). "Once prison officials know about a serious risk of harm, they have an obligation "to take reasonable measures to abate it." Id. (citations omitted).

As to whether the plaintiff faced a serious risk of harm, the plaintiff presents evidence that the defendant instructed him to walk by an unlocked door, behind which was Herwald, "an assailant [with] a history of violence" who had previously "robbed and beat [the plaintiff] up while at [the plaintiff's] house." Dkt. No. 62 at 9; Dkt. No. 24 at 5. The plaintiff emphasizes that he and Herwald had a keep-separate order in place, implying the jail acknowledged that Herwald posed a threat of harm to the plaintiff.

The defendant argues that given the keep-separate order and the different holding cell assignments, the plaintiff did not face a serious *risk* of harm (though the defendant concedes the plaintiff suffered *actual* serious harm). Dkt. No. 53 at 8. The defendant points out that he did not order either

6

inmate to open the Holding Block B door, nor was either inmate permitted to do so. Id. He also highlights that the holding block doors normally are kept closed and locked and that inmates in the holding area are restrained until they are directed to their assigned holding block. Id. The defendant concedes, however, that the Holding Block B door was unlocked the day Herwald attacked the plaintiff.

The court finds that the plaintiff has presented sufficient evidence for a reasonable jury to conclude that he faced a substantial risk of serious harm. Keep-separate orders and different housing assignments are effective only to the extent that jail employees enforce them. Simply telling an inmate to stay in his holding block may be insufficient to keep him from leaving the holding block. The defendant acknowledges this reality when he concedes that the holding block door should have been locked. That is because locking a door is the only way to guarantee that an inmate will not go through it. Had the Holding Block B door been locked, the plaintiff would have faced no risk that Herwald would attack him. A jury could reasonably conclude that directing the plaintiff to walk past an unlocked door, behind which was an unrestrained inmate who had to be kept separate from the plaintiff for what one must assume were security reasons, exposed the plaintiff to a substantial risk of serious harm.

In order to survive summary judgment, however, the plaintiff must present evidence creating a material dispute both on the objective prong and subjective prongs of the standard. For the subjective prong, the plaintiff must

7

present evidence from which a reasonable jury could conclude that the defendant *knew* about the substantial risk to the plaintiff's safety and that he disregarded that risk. To satisfy that requirement in this case, the plaintiff must present evidence supporting a reasonable inference that the defendant *knew* the door was unlocked and did nothing about it. The plaintiff has not presented that evidence.

The defendant asserts that the door was supposed to be locked and that he assumed it was locked. He further asserts that if he had known it was unlocked, he would have locked it. The plaintiff disagrees with the defendant's assertions, but he provides no evidence to demonstrate that the defendant knew the door was unlocked. While the plaintiff insists that the door was propped open, he has presented no evidence that the defendant was aware of that, even if it is true. Because the plaintiff lacks personal knowledge of what the defendant knew or did not know, his say-so, without more, is not enough to create a genuine dispute as to an issue of material fact.

To address his failure to present evidence in support of his assertion that the defendant knew the door was unlocked, the plaintiff explains that he asked for jail records in discovery but did not receive them. See Dkt. No. 62 at 5-6. This is the first time the plaintiff has made this claim; he did not file a motion to compel before discovery closed, nor does he provide any evidence suggesting that—as required by Civil Local Rule 37—he conferred with the defendant about the defendant's alleged refusal to provide these documents before raising this issue with the court. The plaintiff cannot now rely on the defendant's

8

alleged refusal to produce documents to excuse his failure to present evidence. The plaintiff should have raised this issue before discovery closed and before the defendant filed his motion for summary judgment.

Even if the plaintiff had obtained the documents he describes, he does not explain how those documents would have undermined or rebutted the defendant's assertion that he thought the Holding Block B door was locked. The plaintiff identifies inconsistencies in the documents about whether he or Herwald opened the door, and identifies protocols and policies regarding the locking of the door, see dkt. no. 62 at 5-6, but does not explain how a jury could rely on any of the documents he describes to conclude that the defendant knew the door was unlocked.

Next, the plaintiff asserts that he should have been assigned to protective custody rather than being placed in a holding block with other inmates and that the defendant should have escorted him to Holding Block A rather than letting him pass the Holding Block B door by himself. Id. at 7-8. He argues that, if these alternative measures had been taken, the assault would not have occurred. This argument misses the mark. "A defendant is not . . . required to guarantee a detainee's safety." Frake v. City of Chi., 210 F.3d 779, 782 (7th Cir. 2000). "The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent." Id. (citing Manarite by and through Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992)).

9

Under the Eighth Amendment, officials must take steps to address *known* risks of harm. A jury could conclude that jail officials knew Herwald posed a substantial risk of harm to the plaintiff. But the evidence is undisputed that there was a procedure in place to address the risk; there was a keep-separate order, the plaintiff and Herwald were assigned to different holding blocks. The defendant was aware of the keep-separate order and sent the plaintiff to a different holding block than the one that held Herwald. If the Block B door had been locked, these measures would have protected the plaintiff from the risk that Herwald could harm him; the risk existed only because the door was unlocked. Unless the plaintiff presented evidence that the defendant knew the door was unlocked and ignored that fact, no reasonable jury could find that the defendant ignored, or failed to address, a *known* risk of harm. Because the plaintiff has presented no evidence to show that the defendant knew the door was unlocked and ignored that fact, no jury could reasonably conclude that the defendant was deliberately indifferent to the risk Herwald posed to the plaintiff. The court will grant summary judgment in favor of the defendant.[3]

## III. CONCLUSION

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 52. The court **DISMISSES** this case and will enter judgment accordingly.

---

[3] The defendant also argues that he is entitled to qualified immunity; because the court finds that he is entitled to summary judgment on the merits, the court will not address this argument.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 29th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**